Good morning. My name is Martin Elk and I'm appearing for the petitioner, Hank Chen. I have read the court's instructions and I will only be emphasized, or at least be emphasized and not repeated, what's in there. Basically, this case boils down to the validity of the plea bargain. And although there was a colloquy about the plea, my client does not speak English. And although she had an interpreter, she did things such as agree to 120 days in the plea bargain paperwork when she was told that there would be no time at all. And so our position is that the plea is unvalid and the conviction is unvalid. So the problem, and this is a very troubling case because the underlying conviction does seem to be problematic, but the problem that I have with this petition is that the petitioner cannot collaterally attack the underlying conviction in a petition for review. And so I realize there's some problems with that conviction and I'm just wondering, are there other avenues, like for example, Cal Penal Code section 1473.7 where you might be able to get a random court novice to get her relief from the underlying conviction? See, I agree. I agree with all of the things that have been mentioned. Obviously, she didn't speak English. Obviously, she wasn't at the house. She was not here. Obviously, it's the proceedings, right? I don't know what her lawyer was doing at that point. But yes, it's all problematic. But the problem is this doesn't appear to be an avenue in which you can collaterally attack the conviction. My understanding of this court's jurisdiction is that, and I'll read from the court's instructions, the court has a book of honest instructions on the web, online, and the court has jurisdiction to determine its jurisdiction, including the final order of removal against an alien who was removable by reasons of having committed an aggravated felony. And it goes on to question whether the crime of conviction is an aggravated felony. So, my position is that we have passed the burden of proving why, because we have convincing evidence that the ending is removable, and the facts as alleged are grounds for the removability that there is hope. And I'm just quoting from the court's website. And it's my position that there are two. And so, the court has jurisdiction to go behind this court, and it has jurisdiction to go behind that and look for the first time behind the facade of this plea agreement. And this is a colloquy in the petition that was filed with this court. And it is a colloquy. I've heard it hundreds of times when I was a defendant's attorney. And it doesn't go beyond, yes, your Honor, yes, your Honor, yes, your Honor, on the part of the defendant. But this is a woman who's been here for 24 years, not convicted in any crime, convicted by her brother, is most likely the guilty person here. And she's the only person who faces any immigration consequences. The case is not. All right. Now, what happened to her U-Visa application? I do not know. May I ask my co-counsel? Sure. Do you want to do that before you do your rebuttal? Okay. I'll do that for me. Yeah. And then the other question I have, which is another strange thing in this case, Jen had a naturalization application that was almost completed. And what happened to that? I apologize. I don't know all that anymore. I'm here only as a historical argument. Okay. And I will clarify both of those things. It seems like she had some legitimate avenues, even with the agency. Yes. And I don't know. I don't know. I'm sorry. I apologize. All right. So, we have to cut to the chase. And I appreciate that. That's our position, is that the underlying conviction is not a valid conviction. And the disability has jurisdiction to say so. Have you tried to mediate this with the government? I have not, Your Honor. I spoke just wanting to, you know, opposing counsel. And we will talk later. We have a ninth circuit mediation unit where maybe some of these things are being looked into and worked out. If both parties are willing to participate. We are certainly willing to participate. And I'm willing to postpone, if that's possible, the remainder of this hearing. If opposing counsel will agree to that. I don't think we would postpone the argument and then reschedule it. What we would do is if panel thinks the case is suitable for mediation, we would likely order the case go to mediation. Take it up if the mediation doesn't work. But you should be making your argument file as far as I'm concerned. And also, I was curious if you had any case precedent that you think says that you're entitled to make a collateral attack or a threat in this. Yes, Your Honor, I do. And I have them from the courts online. Immigration law brief. There was a dated last December, very recent. Incredibly detailed. I'm not sure what it should be called. An immigration outline. Immigration outline. A simplified immigration outline. I've read that. And I believe that the case on page D7, D as in David, 7, Rodriguez-Castellan v. Holder, says that the court retains jurisdiction over the Constitution claims or questions of law, which include the question of whether a state crime or conviction is an aggravated felony. And so my position is that this crime is not, it wasn't, this plea is not a valid plea. So it can't be, it can't be a conviction. If it's not a valid plea, she doesn't have as much to say. My question relates to this. Certainly, you can argue whether or not the crime is an aggravated felony. But I was asking if you have authority that says you can challenge in this proceeding the conviction itself and say it's an invalid conviction. Well, there might be, but I wasn't aware of that. Okay. Well, I think of the words you put before the order, not those words, but it says the government has the burden of proving by clear, unequivocal, and convincing evidence that the facts alleged in its grounds for immovability are true. And the case is to confront S. Young v. Holder. It's on page D7 of the court's outline. Would you like the execution? Okay. Sure, yeah, I'd love it. Okay. And so I'd like to get it from the other one. Okay. Page D7 of the outline. And so my position is that the facts as alleged are non-criminals. Because we have a person who doesn't speak English, who spent 13 months in jail in immigration court, and then some 60 days in jail for the crime when she didn't commit. She was brought into this case because it was a piece of trash, had her name on it, because she used to live here. We admit that she used to live here. She moved out six or eight months prior, and she paid utilities, paid T&T bills, she paid them, put her name on them, had a new residence in another town. She wasn't there during this marijuana cooperation. Maybe her brother was there. But the only person who faces immigration consequences is her. Her brother does not face immigration consequences. So she spent 60 days in jail, approximately 60 days in jail, on the incriminal conviction, approximately 13 months in jail for the immigration consequences of that new regime before she was released because of, I think it was overcrowding and understaffing. When she pled guilty, was she advised of the potential immigration consequences? Well, it's on the form. It's on the form, you wonder. But our position is that she had no idea it was her story. She said yes or no. I hate to use this word, but I think I'm talking to her. And I have, when I was a criminal defense lawyer, I explained things fully, but they still, some clients still respond yes or no as instructed without fully understanding the consequences. And this person doesn't speak English, so it's a whole lot worse. And she didn't say yes or no. But part of it is, you know, we try to do justice in this system, and it's a system, so I do justice when someone doesn't speak English and we're getting into the middle of a crime. She didn't even know that she was told she's needed in probation. So she signed yes to the 120-day limit on the peace agreement. It's completely nonsensical. Right. You made my point, and I think I'm done. How's that? Do you need to reserve for us for time? Yes, please. Maybe you can talk to your co-counsel about these other issues. Thank you. Good morning, Your Honors. May it please the Court, Janet Allen for Respondent, the Attorney General. Your Honors, as the petitioner notes, 1252A2C does apply here to bar jurisdiction because Ms. Chen was convicted of an aggravated felony, and she has never challenged the immigration judge's determination that her conviction constituted an aggravated felony. That means that this Court is only able to consider colorable constitutional claims and questions of law under AUSC Section 1252A2C. And the keyword there is colorable. Ms. Chen has raised two claims in her petition for review. One, she argues that her state court conviction is invalid. As your Honor noted, this is an impermissible collateral attack on the validity of her state court conviction. Neither the Board of Immigration Appeals nor this Court can overturn or even speak to the validity of a California state court conviction. It is not clear that Ms. Chen sought relief in California state courts, as you noted in her petition for a writ of coram nobis or any other motion that I would like. I think that she would be eligible for that right, possibly. I don't know. Is that my area? I'm not answering or not answering that. Perhaps it's something for the judge to look into. I certainly think that that's a good point. And when or if the state court does overturn the conviction, it certainly would be time to reassess the immigration consequences. But for now, unless and until it is overturned, the immigration consequences remain, and Ms. Chen remains irremovable for that conviction. The second claim that Ms. Chen raises in her petition for review, which she did not before counsel did not speak to this morning, is that the Board of Immigration Appeals failed to consider the arguments she presented in her appellate brief. And that claim is clearly maligned by the record. In her appellate brief, she raised the same collateral attack, and the Board even considered it to a certain extent to note that in the plea form she did initial and agree that she understood that there could be immigration consequences. Is there a second claim? Also, because it was, it was her cat claim made by Uncle Tom, standing there with the conviction. The deferral of removal under the cat, yes. The problem is she doesn't appear to pursue that claim at this stage or before the Board. As the Board noted, she didn't raise that in her appellate brief, which means that then under AUSC Section 1252D, she failed to exhaust her administrative remedies with respect to deferral of removal under the cat. The Board didn't speak to the merits of that claim. Therefore, the court by its jurisdiction did consider the merits of that claim. She also didn't raise the claim in her opening brief, which means she's waived it on review. Because 1252A2D applies, the court's jurisdiction really is limited to the claims that she raises. That's the language of the statute. Constitutional or legal claims raised in a petition for review. And as I've noted, she's only raised two, one of which it seems we may all can agree, and with the exception of Ms. Jett, it is an impermissible collateral attack. And the other is that the Board didn't consider her arguments and the Board didn't assess thoroughly the claims she presented in her brief. The BIA decision is a little ambiguous on this because the last paragraph says that the immigration judge has concluded that she's not demonstrating a prohibition on the possibility for deferral under cat. And then it goes on to say, we find that the immigration judge properly determined that the response is removable as charged and that she's not demonstrating that she's eligible for asylum without a removal or protection under cat. So did they go on to go on that, notwithstanding that she didn't raise it? That sentence, to me, is for restating the determination that because of the particularly serious crime finding, she hasn't demonstrated eligibility because that would bar her eligibility for asylum with holding a removal and with holding a removal under the convention against torture. There's withholding under 1231B3AB, and there's withholding under the cat. An assessment of the merits of the cat would have, in my experience, the Board would include a sentence stating that she hadn't demonstrated that she would more likely than not face torture or be tortured into China. And there's no real assessment of the merits there. It's good to know that exhaustion claims can be raised if the Board addresses the merits. Doesn't it look to me that the Board addressed the merits? Sure. So just going back into your exact place with the question, I think you said that we could consider issues raised. You suggested they would be raised specifically by the petitioner. But do we have jurisdiction to say that an issue was raised by the case, that we flagged so strongly that the petitioner didn't argue? So could an issue raised be one that we think the circumstances raised, even if the petitioner did not advance the issue? There may be circumstances where that would be appropriate, but then the question would be, would the statutory bar to considering claims not presented to the agency or unexhausted claims then come in to preclude consideration of an issue so strongly? But would we have jurisdiction to consider it and raise it ourselves and then remand it to the agency to consider it? If it dealt with the court's jurisdiction, the court does have jurisdiction to determine its own jurisdiction. And in that case, a so spontae claim, issues so spontaneously raised by the court might be appropriate. I hope that answers your question. A couple of points about the assertion that Ms. Chen did not understand what was going on. I understand that this court can't assess the validity, but just to assuage any concerns, she did have an interpreter. And that is reflected in the record, both in the plea form and in the transcript of the plea. I think partly, I think the real problem is that she was advised by her counsel that this was, you know, she was just going to get probation or dismissal. So all this pro for method. And I think there was probably quite an effective assistance from counsel there. It's problematic because obviously we can't make that determination. Do you think this case is a good one for mediation? Possibly a good one for mediation? I'm certainly willing to pursue that. Given that we haven't reached out to our counterparts yet, I can't be sure what you would say in the Department of Homeland Security, but I'm willing to assess matters. I did, just before the argument this morning, talk to a counselor and asked if he had any updates on state court challenges and wasn't able to. And it looks like there aren't any at this point. I mean, that seems, I don't know, maybe even perhaps we can defer mediation and we can work with the conference on this, obviously. I would defer submission and ask you to participate with our Ninth Circuit Mediation Unit, which is how the council pursues aid remedies. Certainly, I can do that, Your Honor. Because it seems there's a lot of oddities in this record. There was an actualization petition that she was homosexualized and then defeated her parents to take care of her. It seems like it's false criticality, and I see no circumstances of why that never went through. The UVC does, in the record, she stated that she did not receive the employment certification, which is a key component to any UVC application, so she wouldn't be provisional eligible at this point, absent an employment certification. Does anybody else have any questions? I have one here. All right. Well, thank you very much. Can you hear us? I am hearing you, Your Honor. All right. Thank you very much. Thank you. Jen, the sessions will be submitted, and we will take a wrestler versus Mary Hill.
judges: Wardlaw, Gould, Shea